**HARDWARE CENTER, INC.,**
**Plaintiff-Appellant-Respondent,**

v.

**PARKEDGE CORPORATION,**
**Defendant-Appellant-Respondent.**

Nos. 41402, 41403.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 2, 1981.

Shulamith Simon and David W. Martin, Husch, Eppenberger, Donohue, Elson & Cornfield, St. Louis, for defendant-appellant-respondent, Parkedge Corp.

Robert C. Jones and Harold A. Tzinberg, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for plaintiff-appellant-respondent, Hardware Center, Inc.

SATZ, Judge.

This is an appeal from a declaratory judgment. We reverse.

The cause was tried on stipulated facts. Defendant Parkedge Corporation is the owner of Concord Plaza Shopping Center (Center). Defendant leased premises in the Center to National Food Stores, Inc. (National). In 1972, National and defendant amended their lease (head lease). In one provision of the amendment, defendant explicitly withdrew "its objections to [National's] subletting" its premises to plaintiff, Hardware Center, Inc. Plaintiff entered into a lease with National and became a sublessee. The sublease is not part of the record before us.

The amendment to the head lease also changed the rent provisions. In the amendment, the "lessee" agreed to pay a proportionate share of the "lessor's" costs of "lighting, operating, maintaining, and repairing" the Center's parking lot. Plaintiff sought a judicial construction of this provision.[1] Specifically, plaintiff sought a declaration that this provision did not require it to pay a proportionate share of the cost incurred by defendant in annually patching holes in the parking lot and resurfacing 10–20% of the existing pavement. Plaintiff also sought a declaration that the provision did not obligate it to pay a share of the cost

of annual premiums for liability insurance on the parking lot. Defendant billed plaintiff for the cost of patching and resurfacing each year from 1973 through 1977. Plaintiff paid these billings. Defendant also billed plaintiff for the insurance premiums in 1976 and 1977. Plaintiff paid both of these billings but paid the 1977 billing under protest.

The trial court declared the costs of the resurfacing were properly charged to plaintiff but the court declared the costs of the insurance premiums were not properly plaintiff's responsibility. However, the court refused to order reimbursement of the 1976 premium payment because plaintiff had made this payment without protest. The court did award plaintiff recovery of the 1977 premium charge.

Both plaintiff and defendant appeal. Plaintiff contests the declaration that the costs of resurfacing the parking lot were properly allocated to it. Defendant contests the declaration that a proportionate share of the costs of the insurance premiums were not chargeable to plaintiff. In addition, as its threshold contention, defendant argues plaintiff is a sublessee and, as a sublessee, plaintiff has no standing to seek a declaratory judgment construing the rent provisions of the head lease between plaintiff's sublessor and defendant. We agree with defendant that plaintiff has no standing to seek a declaratory judgment in this case. We reverse on this ground and, thus, do not reach the other issues and arguments raised in this appeal.

■ Plaintiff sought relief under our Declaratory Judgment Act. § 527.010 RSMo 1978 et seq. Under § 527.020 of the Act, "[a]ny person interested under . . . a written contract" or any person "whose rights,

---

1. Read literally, plaintiff's petition is a request for a construction of the sublease between it and National. In its petition, plaintiff alleges it sublet certain premises from the original lessee, National; then plaintiff quotes the language in issue and explicitly designates this language to be "contained in said sublease agreement." Plaintiff then prays for "a declaration of the

rights, liabilities and duties of the parties as to the language of the sublease agreement." The record established by the subsequent pleadings, the stipulation of facts and issues briefed on appeal, however, clearly demonstrates the only issue tried was the construction of the head lease. Therefore, we address only this issue.

status or other legal relations are affected by a . . . contract" has the right to have determined any question of construction "arising under the . . . contract."[2] Under our case law interpreting the language, a plaintiff seeking a declaration of rights under the Act must have a "legally protectible interest" in the relief sought.[3] *State ex rel. Chilcutt v. Thatch,* 359 Mo. 122, 221 S.W.2d 172, 176 (1949); *Absher v. Cooper,* 495 S.W.2d 696, 698 (Mo.App.1973); *Waterman v. City of Independence,* 446 S.W.2d 471, 474 (Mo.App.1969). The plaintiff must present a set of facts from which he has legal rights against the defendant he names. He must be entitled to some consequential relief immediate or prospective. The judgment sought must be one which will declare a fixed legal right and accomplish a useful purpose. *State ex rel. Chilcutt v. Thatch, supra* at 176. *See Absher v. Cooper, supra* at 698; Borchard, *Declaratory Judgments,* 2d ed. pp. 48–50.

Defendant here argues that plaintiff has no legally protectible interest in the head lease between defendant and plaintiff's sublessor, and, thus, defendant reasons, plaintiff has no standing to bring this suit to have that lease construed. More specifically, defendant argues that plaintiff has no legally protectible interest because plaintiff is a sublessee and, as a sublessee, plaintiff cannot enforce the provisions of the head lease between its sublessor and defendant, *Employees Consumer Organization, Inc. v. Gorman's Inc.,* 395 S.W.2d 162, 166 (Mo. 1965) and, as a sublessee, plaintiff usually cannot be sued on the provisions in that lease.[4] *Geer v. Boston Little Circle Zinc Co.,* 126 Mo.App. 173, 103 S.W. 151, 154 (1907). Plaintiff tacitly admits that a sublessee normally cannot enforce the provisions in a head lease nor have those provisions enforced against it. Plaintiff, however, attempts to distinguish this case from the usual case and attempts to show it has a legally protectible interest sufficient to secure judicial construction of the provisions of the head lease in question.

Plaintiff first contends the instant lease is not the usual head lease between a lessor and a sublessor. Plaintiff argues the amendment to the head lease was entered into by defendant and plaintiff's sublessor for the express purpose of allowing plaintiff to become a sublessee. This tri-party relationship, plaintiff argues, makes plaintiff a third-party beneficiary to the amended head lease, and, as a third-party beneficiary, plaintiff has the right to seek a judicial construction of the covenants in the lease. We disagree.

■ Missouri has adopted the Restatement's classification and definition of third-party beneficiaries to contracts. *See Mer-*

2. § 527.020 reads: "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

3. The statute itself appears to distinguish between a person interested under a contract and a person whose rights, status or legal relations are affected by the contract. Arguably, one could be interested and not have his rights, status or legal relations affected. However, judicial interpretation does not reflect this distinction and, in the instant case, we focus on whether plaintiff has a legally protectible interest. *See, e. g., State ex rel. Chilcutt v. Thatch,*

359 Mo. 122, 221 S.W.2d 172, 176 (1949); *Absher v. Cooper,* 495 S.W.2d 696, 698 (Mo. App.1975).

4. Usually, it is said that lack of privity of contract or estate prevents either the lessor or sublessee from taking action against the other on the covenants in their respective leases. However, by statute and in certain isolated instances, a legal relationship may be created between a lessor and a sublessee entitling either or both judicial protection. *See,* Note, *The Interrelation Between Landlord and Subtenant,* 40 Col.L.R. 1049 (1940). *See* § 441.220 RSMo 1978 allowing a lessor to recover rent from a sublessee where the right of attachment under § 441.240 RSMo 1978 exists or where the lessor seeks a lien upon crops grown on the property under § 441.280 RSMo 1978.

tens v. MGR Inc., 507 S.W.2d 433, 435–36 (Mo.App.1974); *Restatement of Contracts*, § 133. Beneficiaries to contracts are divided into three classes: donee beneficiary, creditor beneficiary and incidental beneficiary. *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 42–43 (Mo.App.1980); *Stephens v. Great Southern Savings and Loan Ass'n.*, 421 S.W.2d 332, 335 (Mo.App.1967); *Restatement of Contracts*, § 133. Both donee and creditor beneficiaries have enforceable rights against the promisor; the incidental beneficiary does not. *Laclede Inv. Corp. v. Kaiser, supra* at 43; *Stephens v. Great Southern Savings and Loan Ass'n., supra* at 335. Thus, for plaintiff here to have enforceable rights, it must be either a donee or creditor beneficiary. It is neither.

■ A person is a creditor beneficiary if performance of the promise will satisfy an actual, supposed, or asserted duty of the promisee to the beneficiary. *Restatement of Contracts*, § 133. Plaintiff clearly does not fall into this category. National owed it no duty which defendant agreed to undertake. Likewise, plaintiff is not a donee beneficiary. A person is a donee beneficiary of a promise if the purpose of the promisee in obtaining the promise is to confer upon the beneficiary the right against the promisor to some performance neither due, asserted nor supposed to due from promisee to the beneficiary. *Restatement of Contracts*, § 133. However, the purpose or intent necessary to create a donee beneficiary is the promisee's "intent that the promisor assume a direct obligation to [the beneficiary]." *Stephens v. Great Southern Savings and Loan Ass'n*, 421 S.W.2d 332, 335 (Mo.App.1967). The mere desire to confer a benefit on the third party or to advance his interests or promote his welfare is not sufficient. *Id.* at 335; *see also, Laclede Inv. Corp. v. Kaiser, supra* at 42.

■ For purposes of determining a party's status as a beneficiary, a single contract may be divided into a number of promises. A person may be a donee benefi-

ciary of some promises and an incidental beneficiary of others. *See Laclede Inv. Corp. v. Kaiser, supra* at 43. Here, the only express promise which arguably contemplates plaintiff as beneficiary is the promise to allow National to sublet to plaintiff. There has been no breach of this promise and defendant has proposed no action which might constitute a breach. Defendant has continually recognized National's right to sublet to plaintiff and has accepted plaintiff as a lawful sublessee. Understandably, plaintiff does not seek construction of this promise. The other covenants in the lease amendment including the one plaintiff asked the court to construe, run from defendant to National and vice-versa. Obviously, National could not, by contracting with defendant, impose any duties on plaintiff regarding payment of the costs of maintaining the common areas. Also, it is very unlikely that National's purpose or intent in entering into those covenants concerning the common areas was that defendant incur an obligation to plaintiff. There is a strong presumption that people contract to benefit themselves and not third persons, *Laclede Inv. Corp. v. Kaiser, supra* at 42. This presumption has not been overcome here.

Moreover, plaintiff has not distinguished this case from the holding and rationale of *Employees Consumer Organization, Inc. v. Gorman's Inc., supra.* There, the lessor, lessee and sublessee consented to the sublease and affirmed the terms of the head lease. Nonetheless, our Supreme Court did not deviate from the general rule. It prohibited the sublessee from enforcing the covenants of the head lease because privity was lacking. *Id.* at 166. That ruling is applicable to the present case.

Plaintiff posits a second theory to justify its standing. Plaintiff argues that its occupancy of the premises and payment of the rent gives it a legally protectible interest which is cognizable under the Declaratory Judgment Act, even if it cannot enforce the covenants or provisions of the head lease.

Plaintiff's argument is presented as a bald conclusion, without supporting case law or explicit logic. Contrary to plaintiff's assertion, Missouri's law leads to the conclusion that plaintiff's alleged interest is insufficient to warrant judicial protection under the Declaratory Judgment Act.

Admittedly, our courts have not precisely defined who has standing to bring suit to construe a contract under our Declaratory Judgment Act. Obviously, the parties to the contract would have standing to bring suit to construe its provisions. Also, a third-party beneficiary who could enforce the contract may sue for a declaration of rights under the contract. *See, e. g., Gurniak v. Lizewski,* 411 S.W.2d 84, 86 (Mo. 1967). However, research has disclosed no Missouri case granting standing to seek a declaration of rights under a contract to one who has no right to enforce the contract. This silence is understandable. To grant such standing would bring parties and controversies before the court who, but for the Declaratory Judgment Act, could not invoke the court's protection. This would extend the power of the court to a degree not contemplated by the Act. The Act does not enlarge the jurisdiction of the court over subject matter or parties. Borchard, *Declaratory Judgments* (2d ed. 1941) at 233. It merely opens the doors of the court to certain potential defendants or plaintiffs at a stage prior to that justifying an action for other traditional relief.[5] Borchard, *Declaratory Judgments* (2d ed. 1941) at 232; *e. g., City of Camdenton v. Sho-Me Power Corp.,* 361 Mo. 790, 237 S.W.2d 94, 97 (1951); *Mercantile Trust Co.*

*v. Chase Hotel, Inc.,* 510 S.W.2d 807, 809 (Mo.App.1974).

To allow plaintiff to bring the action it seeks to bring does more than allow plaintiff to come to court earlier than it would otherwise be able. To permit plaintiff's action against defendant, in effect, permits plaintiff to obtain a definition of a legal relation which otherwise does not exist. Plaintiff has obtained no right against defendant simply by virtue of its occupancy and payment of rent to enforce the contract between defendant and National. *Employees Consumer Organization, Inc. v. Gorman's Inc., supra* at 166. Therefore, under the theory it has set forth, plaintiff could not enforce the lease amendment, however construed. Moreover, National, which could enforce the provisions of the lease amendment, would not be bound by the declaratory judgment because it is not a party to this action. In effect, any judgment rendered in this action would be illusory. Thus, under present case law, plaintiff is not entitled to the declaratory relief it seeks.

Plaintiff has not supported its theory that it is a donee beneficiary of the express promise concerning maintenance of the parking lot nor has plaintiff supported its theory that it has a legally protectible interest created by its occupancy and payment of rent. However, both of plaintiff's theories may rest on the unarticulated premise that, as a sublessee, plaintiff is a donee beneficiary to or has a legally protectible interest in the implied covenant of quiet enjoyment in the head lease. The implied covenant of quiet enjoyment is created by a

5. "[T]he action for a declaration may be brought in two types of cases: (a) where another remedy would also have been possible, in which event the declaration is an alternative remedy; and (b) where no other action would have been possible. In the latter types of cases, a plaintiff sues for a declaration that he is under no duty to the defendant or seeks a construction of a contract or other instrument before breach, i. e., at a stage prior to that justifying an action for damages. The petition in such case performs the function of a bill of

peace. In a sense, the power to decide is thus extended, for the issue is initiated in a form not traditional and often by a prospective defendant, rather by the normal plaintiff. A new opportunity for relief is thus afforded, i. e. new legal interests are recognized and protected. But no new subject-matter or parties are placed under the court's control, notwithstanding a modification of the forensic position of the litigants." Borchard, *Declaratory Judgments* (2d ed. 1941) at 232–33.

promise implied from a lease that the lessor will allow possession and quiet enjoyment of the premises during the term contracted for and, by his own acts, will not disturb the possession of his lessee. *See King v. Moorehead*, 495 S.W.2d 65, 69 (Mo.App.1973). Because defendant here consented to plaintiff becoming a sublessee, it would follow that defendant intended to allow plaintiff to peacefully occupy the premises. *See Marchese v. Standard Realty and Development Co.*, 74 Cal.App.3d 142, 141 Cal.Rptr. 370 (1977). This concept of an implied covenant of quiet enjoyment running from a lessor to a sublessee was not raised or addressed by either party. For our purpose here, we neither adopt nor approve it, for even if we assume the concept is valid and relevant, plaintiff would still not prevail.

If plaintiff derived a right of quiet enjoyment from the amended head lease, this right would be threatened by any default in the obligations of the head lease which could lead to eviction. The termination of the head lease necessarily would cause the termination of the sublease. Non-payment of rent is a default which normally leads to eviction. Thus, in order to protect its right to quiet enjoyment, plaintiff would have the right to cure this default, by paying the rent. *See American Law of Property*, Vol. 1, § 3.62. Arguably, then, plaintiff would have the correlative right to seek a declaratory judgment defining the exact nature and extent of payment due. However, plaintiff has not demonstrated these circumstances exist in the present case. There is no indication National disagrees with defendant's interpretation of the rent provision at issue. There is no indication National will default. Absent evidence of a default or intended default by National, there is no justiciable controversy between plaintiff and defendant based on plaintiff's right to quiet enjoyment. Even though the Declaratory Judgment Act permits invocation of the Court's jurisdiction at a point earlier in the procedural process than was traditional, the existence of a justiciable controversy is still an essential prerequisite to an action for declaratory judgment. *See Commonwealth Ins. Agency v. Arnold*, 389 S.W.2d 803, 806 (Mo.1965). A declaratory judgment based on a hypothetical or speculative situation which may never come to pass is inappropriate. *MFA Mut. Ins. Co. v. Hill*, 320 S.W.2d 559, 564 (Mo.1959). Here, National's default and plaintiff's deprivation of quiet enjoyment have not come to pass and we have no indication they are imminent. From the record, the danger to plaintiff's assumed right to quiet enjoyment would not be a present danger; rather, it would be contingent on the happenings of hypothetical future events, and the prejudice to plaintiff would be merely possible and remote rather than actual and genuine. Thus, even if plaintiff had standing to bring this action based upon an assumed right to quiet enjoyment, it has not presented facts which create a justiciable controversy ripe for a declaratory determination. *See, e. g., City of Joplin v. Jasper County*, 349 Mo. 441, 161 S.W.2d 411, 413 (Mo.1942).

Defendant, quite naturally, complained only about those declarations of the trial court's declaratory judgment which were adverse to defendant. However, as noted, defendant supported its complaint, in part, by an attack that plaintiff had no standing to bring the present action. Because our decision rests on plaintiff's lack of standing, the entire judgment of the trial court must be reversed.

Judgment reversed.

SMITH, P. J., and SIMON, J., concur.