NEIGHBORS AGAINST LARGE SWINE
OPERATIONS, Appellant,

v.

CONTINENTAL GRAIN COMPANY,
Respondent.

No. WD 49537.

Missouri Court of Appeals,
Western District.

April 11, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 30, 1995.

Application to Transfer Denied
July 25, 1995.

Randall D. Crawford, Kansas City, for appellant.

Robert M. Kroenert, R. Christopher Abele, Kansas City, Terry M. Evans, Trenton, for respondent.

Before SMART, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Neighbors Against Large Swine Operations (NALSO) appeals the dismissal of its application for a permanent injunction to prohibit Continental Grain Company (Continental) from operating a large swine operation in Daviess County in alleged violation of the Missouri ~~Farming Corporations Act~~, §§ 350.010–.030.[1] NALSO also appeals denial of its Motion to Amend its Petition to include a claim for declaratory judgment that Continental is in violation of the Act and to name additional plaintiffs. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

NALSO filed suit seeking a permanent injunction to prohibit Continental from operating a large swine operation in alleged violation of the Missouri Farming Corporations Act (the Act). NALSO is a not-for-profit corporation consisting of Missouri residents who all live in close proximity to the swine farm to be operated by Continental. Continental, a Delaware corporation, is an international agribusiness company with approximately 90% of its receipts from sources other than farming.

On January 31, 1994, Continental acquired farm land to operate swine farming operations in Daviess County, Missouri. Every corporation engaged in farming or proposing to commence farming in Missouri must register with the director of the state department of agriculture. § 350.020. Continental registered as a family farm corporation[2] pursuant to section 350.010(5).

On February 18, 1994, NALSO filed its Application for Permanent Injunction to enjoin Continental's swine farm operation. In response, Continental sought dismissal of NALSO's application for failure to state a claim upon which relief could be granted because no private right of action exists under the Act.

Perhaps anticipating that the trial court might find NALSO was not within the class protected by the Act, NALSO thereafter sought to amend its Petition to add individual family farmers as plaintiffs. NALSO further moved to amend its pleading to add a request for declaratory relief to determine whether Continental could lawfully engage in business under the Act. The trial court denied both motions to amend and ruled that no private right of action exists under the Act. This appeal followed.

## II. LEGAL ANALYSIS

NALSO claims it is entitled to bring this action under Missouri's Farming Corporations Act. The Act provides that publicly-held corporations cannot engage in farming unless they meet one of the exceptions provided in the Act. § 350.015.[3] The Act has

---

1. All statutory references are to the Revised Statutes of Missouri 1986 and the 1993 Cumulative Supplement thereto, unless otherwise indicated.

2. A family farm corporation is:

   [A] corporation incorporated for the purpose of farming and the ownership of agricultural land in which at least one-half of the voting stock is held by and at least one-half of the stockholders are members of a family related to each other ... and at least one of whose stockholders is a person residing on or actively operating the farm, and none of whose stockholders are a corporation prohibited by section 350.015 from entering into farming, or any corporation which is subject to the controlled expansion provisions of section 350.015[.]

3. These exceptions include family farm corporations, § 350.015(2), raising hybrid hogs for the selective breeding and genetic improvement, § 350.015(10), and the production of swine or swine products in prescribed areas, § 350.016 (applies only to "any county of the third classification with a township form of government which has at least three thousand but no more than four thousand inhabitants, or any county which adjoins such county which has a population of at least four thousand five hundred but no more than six thousand five hundred inhabitants" or to "agricultural land in counties located

been construed only once in *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801 (Mo. banc 1988). While the Missouri Supreme Court did not address whether a private right of action may be implied under the Act in *Lehndorff Geneva*, it did explain that the statute was enacted because of a concern that the superior resources of large corporations would allow them to outcompete traditional family farms, exacerbating the latter's decline. *Id.* at 805. As the Court explained, the rationale for the Act is thus:

> [T]o prevent the concentration of agricultural land, and the production of food therefrom, in the hands of business corporations to the detriment of traditional family units and corporate aggregations of natural persons primarily engaged in farming. Thus, large publicly held corporations are prevented from acquiring and operating large tracts of farmland.

*Lehndorff Geneva, Inc.*, 744 S.W.2d at 805.

The Act empowers the Attorney General to bring an action against any corporation found to be in violation of the provisions of the Act. § 350.030. If a violation is found, the trial court is given discretion to make such orders as are necessary to bring the corporation into compliance with the Act. *Lehndorff Geneva, Inc.*, 744 S.W.2d at 807. The court may, in its discretion, order the "ultimate sanction" of divestiture of the land within two years. *Id.* Any lands not divested within the time prescribed shall be ordered sold by the court at a public sale. § 350.030.

It is undisputed that the Missouri Attorney General has not brought an action against Continental for violation of the Act. NALSO argues that inaction by the Attorney General should not bar enforcement of the Act. To the contrary, NALSO suggests, it is due to the danger of just such an allegedly ill-advised failure of the Attorney General to act that persons such as plaintiff should be entitled to bring the current action, for their benefit and the benefit of Missouri farmers, so as to prevent Continental's alleged continued operation in violation of the Act. Whether such a private right of action exists must be determined by reference to the Act itself.

## A. A Private Right of Action Is Not Created by the Act

■ The Act does not expressly either establish or prohibit a private right of action. Neither *Lehndorff Geneva* nor any other case has considered whether such a private right of action is created under the Act. As both parties recognize, this issue is thus one of first impression for this Court to resolve.

■ NALSO claims that the trial court erred in holding that no implied private right of action exists under the Act. In so arguing, NALSO properly recognizes that creation of a private right of action by implication is not favored. *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944, 947 (Mo. banc 1982). NALSO argues, however, that the prerequisites to a private right of action are present here. In an interesting and well-reasoned analysis, it interprets such cases as *Wear v. Walker*, 800 S.W.2d 99 (Mo.App.1990); *Jensen v. Feely*, 691 S.W.2d 926 (Mo.App.1985); *State ex rel. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99 (Mo.App.1984); *Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n*, 265 S.W.2d 374 (Mo.1954); and *Cheek v. Prudential Ins. Co.*, 192 S.W. 387 (Mo.1916), to provide that, in determining whether a private right of action can be implied, the court must:

> Look to see if the law is merely for the benefit of the public and penalty provisions are a means of enforcement or whether the statute is for the benefit of particular individuals or class of individuals and not penal in nature. If it is penal and does not benefit a particular class, then there is no private cause of action. Conversely, if it isn't penal and does benefit a particular

north of the Missouri River and west of the Chariton River and having a population of more than three thousand five hundred and less than seven thousand inhabitants which border at least two other counties having a population of more than three thousand five hundred and less than seven thousand inhabitants"). The record does not contain sufficient information to determine whether the operations at issue fit within these exceptions, as the case was decided on a motion to dismiss.

class, then a private cause of action can and has been implied.

NALSO suggests that the many cases refusing to find a private cause of action can be distinguished because the plaintiffs therein were not within the class sought to be protected or because the statute in question was penal in nature and thus intended to benefit society in general, rather than a particular group of persons. NALSO then suggests that the Missouri Supreme Court has already found that the Farming Corporations Act is intended to benefit the particular class of individuals represented by NALSO—family farmers.

NALSO notes that, while NALSO is not itself a family farmer, it has moved to amend to add individual family farmers as plaintiffs. As such persons are within the class of persons entitled to the benefit and protection of the Act, NALSO argues a private right of action should be permitted.

NALSO suggests that the second factor it gleans from the above cases is also met here, for the Act is clearly remedial rather than penal in nature. We believe that a substantial question exists as to whether the Act could properly be characterized as being solely remedial in nature. As Continental notes, the provision allowing the judge to order the corporation to divest itself of its land holdings within two years may be viewed as penal in nature, for it may require the corporation to undergo serious financial losses, as well as loss of valued property. Even were that provision not considered penal, we note that a preceding section of the statute, § 350.020(5), provides that failure to file reports required to show compliance with the Act is a misdemeanor—a criminal act—for which punishment shall be "a fine of not less than five hundred nor more than one thousand dollars." We thus cannot say that this Act is solely remedial in nature. It clearly contains both remedial and penal aspects.

Equally importantly, while counsel for NALSO has done an impressive job of harmonizing the cases and of extrapolating a workable set of relevant factors to be considered in determining whether a private right of action exists, the resulting interpretation cannot withstand the contrary construction of relevant factors adopted by the Missouri Supreme Court in *Johnson v. Kraft Gen. Foods,* 885 S.W.2d 334 (Mo. banc 1994).

Decided during the pendency of this appeal, *Johnson* made it clear that Missouri will permit the implication of a private right of action in only the narrowest of circumstances. The *Johnson* plaintiffs alleged that defendant Kraft had violated section 454.505.10 by discharging Plaintiff after receiving notice of a court order to garnish Plaintiff's pay. That statute authorized the Director of the Division of Child Support Enforcement to enforce it, and contained no express provision relating to a private cause of action.

The Missouri Supreme Court found the statute's provision for enforcement of the Act by the Division of Child Support Enforcement brought the case squarely within the rule that when "the legislature has established other means of enforcement [of a statute], we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent." *Johnson,* 885 S.W.2d at 336 (*citing R.L. Nichols Ins. v. Home Ins. Co.,* 865 S.W.2d 665, 666 (Mo. banc 1993); *Shqeir v. Equifax, Inc.,* 636 S.W.2d 944, 948 (Mo. banc 1982)). As *Johnson* explained, the rationale for this rule is that, because the legislature specifically gave authority to one party—the Division—to enforce the Act:

It follows that the legislature would have manifested its intent in like manner had it intended to create additional or alternative means of enforcement. The failure to do so gives rise to the implication that the Division Director has the exclusive right to bring suit.

*Johnson,* 885 S.W.2d at 336.

*Johnson* did hold that, if there is some other "clear implication" that the legislature intended to create a private right of action, then the courts will recognize one "despite both the absence of express language to that effect and the presence of 'other means of enforcement.'" *Id.* at 336. *Johnson* further recognized that the fact that the putative plaintiffs were members of the class the leg-

islature sought to protect by enactment of the statute "may be a viable factor in determining a 'clear implication' of legislative intent." *Id.* at 336–37.

*Johnson* specifically held, however, that mere presence in the protected class "does not, standing alone, negate the implication of exclusivity created by the presence of an expressly stated means of enforcement." *Id.* at 337. To the contrary, the legislature may have "intended nothing more than state enforcement of the statutory violations." *Id.* at 336. This makes sense. If mere membership in the protected class were a sufficient basis on which to permit a private right of action, then every statute could be privately enforced if the suit were brought by the proper plaintiff. Rather, the plaintiff must also show some additional proof of the fundamental requirement that the legislature *intended* private enforcement. The *Johnson* plaintiffs were unable to show such a "plus factor," and dismissal of their claim was affirmed.

In applying the *Johnson* analysis to this case, we assume for present purposes that individual family farmers are within the class of persons which the legislature sought to protect by the Act.[4] Nonetheless, because Section 350.030 of the Farming Corporations Act specifically provides for its enforcement by someone other than plaintiff—specifically, by the Attorney General—plaintiffs must also show an additional "plus factor" which demonstrates a "clear implication" that the legislature, despite its silence, intended to allow private individuals to also enforce the Act. Despite the creativity of its arguments, this NALSO simply cannot do.

NALSO does suggest that such an implication arises from the alleged fact that it would "thwart the legislative goals" of the statute if

an enforcement action were to be barred simply because the Attorney General erroneously chose not to bring it. However, NALSO overlooks the point that the legislature may have believed that the Attorney General, as a publicly elected and responsible official of the Missouri government, was in a better position to make an impartial decision whether it would be in the interests of Missouri's farmers to bring suit than would be farmers who were competitors of the corporation. The latter might, in some instances, be motivated to bring suit for personal reasons rather than in order to benefit Missouri farmers. While we hasten to add that we have absolutely no indication that this is the purpose of the suit here, such a hypothetical concern could well support the legislature's decision as to who should enforce the statute.

In a related argument, NALSO suggests that a private cause of action should be recognized because, if the Attorney General refuses to enforce the Act, those persons who are entitled to the benefits and protection of the Act have no remedy. As NALSO recognizes, however, other means are available to seek enforcement of the statute, including but not limited to a mandamus action seeking to compel the Attorney General to investigate Continental's status and operation. Of course, such an action would be successful only if plaintiffs could meet the difficult burden of showing that the Attorney General had failed to exercise or had abused his discretion in determining not to bring suit against Continental.

### B. *NALSO's Motion to Amend to Add a Petition for Declaratory Judgment Was Properly Denied*

NALSO also appeals the trial court's denial of its motion to amend its Petition to add a

---

4. *Lehndorff Geneva* certainly recognized that the Act was intended to assist family farmers to compete with large corporations. However, the Act does so by a statute which "regulates the balance of competitive economic forces in the field of agricultural production and commerce, thereby protecting the welfare of its citizens comprising the traditional farming community." *Id.* at 806.

NALSO and the proposed additional farmer plaintiffs are local competitors of Continental who presumably feel threatened by the competi-

tion that Continental provides. It is certainly arguable that they thus fall within the class to be protected by the statute. On the other hand, as discussed *infra*, it could be argued that the legislature intended to protect family farming as a whole, not individual farmers, by permitting the Attorney General to exercise his discretion to determine when a particular corporate farmer endangered the balance of competitive forces, and that permitting suit to be brought by individual competitors would not be in the best interests of Missouri farmers as a whole.

claim for declaratory judgment that Continental cannot lawfully engage in business under the Act.[5] NALSO asserts such a claim falls within the legitimate purview of the Declaratory Judgment Act. It also claims that its petition for declaratory judgment differs from its petition for a permanent injunction in that the declaratory judgment count does not seek to enforce the Act, but rather merely seeks a determination as to whether Continental's operation of a swine farm is illegal. NALSO indicated at oral argument it would use a finding of illegality to urge the Attorney General to bring an enforcement action against Continental.

■ Any person whose rights are affected by a statute may obtain a declaration of rights, status or other legal relations arising under the statute. Rule 87.02(a). A declaratory judgment action provides an appropriate method for determining controversies concerning the construction of statutes and powers and duties of governmental agencies thereunder. *Regal–Tinneys Grove Special Road Dist. v. Fields*, 552 S.W.2d 719, 722 (Mo. banc 1977). Missouri courts have not addressed the specific issue of whether a declaratory judgment action to construe compliance with a statute is proper when a private cause of action is not provided.

■ A plaintiff seeking a declaration of rights under the Declaratory Judgment Act must have a "legally protectible interest" in the relief sought. *Hardware Center, Inc. v. Parkedge Corp.*, 618 S.W.2d 689, 692 (Mo. App.1981). Whether a person has a legally protectible interest so as to confer standing is a matter for determination by the courts under the given circumstances. *Schweig v. St. Louis*, 569 S.W.2d 215, 220 (Mo.App. 1978). A legally protectible interest contemplates a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief. *Absher v. Cooper*, 495 S.W.2d 696, 698 (Mo.App.1973).

■ The statute governing declaratory judgments does not enlarge the jurisdiction of the court over the subject matter or the parties. It merely opens the doors of the court to certain potential defendants or plaintiffs at a stage prior to that justifying action for other traditional relief. *Hardware Center*, 618 S.W.2d at 693–94. Thus, the Declaratory Judgment Act cannot serve as a basis for relief when the party seeking to invoke the Declaratory Judgment Act does not have a direct cause of action concerning the matter on which declaratory relief is sought.

■ The case at hand is somewhat analogous to *Hardware Center*, in which a sublessee brought a declaratory judgment action seeking construction of several contract provisions. *Hardware Center* found that the sublessee had no standing to bring the declaratory judgment, for only those with a right to enforce the contract (i.e., parties to the contract and certain third-party beneficiaries) could sue for declaration of rights under the contract. As the sublessee was neither a party nor a third-party beneficiary, it had no standing to bring the declaratory judgment action even though it alleged its occupancy of the premises and payment of rent gave it a legally protectible interest which was cognizable under the Declaratory Judgment Act. *Id.*

In this action, NALSO has no legally protectible interest to enforce the Farming Corporations Act. Rather, only the Attorney General is empowered to bring an action to enforce the Act. To grant NALSO standing to bring a declaratory judgment action would bring parties and controversies before the court who, but for the Declaratory Judgment Act, could not invoke the court's protection and would extend the power of the court to a degree not contemplated by the Act. *See Hardware Center*, 618 S.W.2d at 694. In the words of Continental, to adopt NALSO's position would thus amount to "an end run around the lack of any private right of action to enforce [the Act]." The Declaratory Judgment Act thus cannot serve as a basis for relief where, as here, the party seeking to invoke the Declaratory Judgment Act does not have a direct cause of action concerning

---

5. As we find that an implied right of action does not exist under the Act at all, we need not reach the question whether NALSO would have standing to bring such a suit or whether the trial court erred in denying NALSO's Motion to Amend to add individual family farmers as plaintiffs.

the matter as to which declaratory relief is sought.

For these reasons, the trial court properly denied NALSO's request to amend its Petition to include a request for declaratory relief. *Birt v. Consolidated Sch. Dist. No. 4,* 829 S.W.2d 538, 543 (Mo.App.1992) (the trial court is free to deny leave to amend if the Petition as amended is without merit). We affirm the judgment of the trial court dismissing the Petition and denying the Motion to Amend to add parties and to add a petition for Declaratory Judgment.

All concur.