

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| FRANK PIERCE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77095 |
| | ) | |
| ZURICH AMERICAN | ) | Opinion filed:  September 9, 2014 |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**The Honorable John M. Torrence, Judge**

Before Division Three:  Gary D. Witt, Presiding, Judge,
Joseph M. Ellis, Judge and Thomas H. Newton, Judge

Appellant Frank E. Pierce appeals from a judgment entered by the Circuit Court of Jackson County dismissing his petition for equitable relief against Respondent Zurich American Insurance Company.  The trial court granted Respondent's motion to dismiss on the basis that the Division of Workers' Compensation ("the Division") had exclusive jurisdiction over the subject matter of this case.  For the following reasons, the trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

In 2009, Appellant sustained a knee injury while working for Bedrock Inc., d/b/a Tri-State Motors ("Employer").[1] Appellant subsequently filed a workers' compensation claim against Employer. Respondent was Employer's workers' compensation insurer. Appellant visited the authorized treating physician selected by Respondent and eventually underwent two knee surgeries. In 2010, the authorized treating physician opined that Appellant would ultimately need a total knee replacement due to pre-existing arthritis, not the 2009 work-related injury. An orthopedic surgeon selected by Appellant's attorneys, however, opined that the need for a total knee replacement resulted from the 2009 work-related injury.

In May 2012, Appellant, Respondent, and Employer settled Appellant's workers' compensation claim by entering into a stipulation for compromise settlement ("the Settlement Agreement") pursuant to § 287.390.1.[2] The parties agreed to a lump sum settlement of $17,933.93 "based upon [an] approximate disability of 26% of the knee." The Settlement Agreement also includes a handwritten provision stating that "medical remains open for 1 (one) year from the date this stip. is approved." The Settlement Agreement further states that Appellant understands that by entering into the Settlement Agreement, "except as provided by Section 287.140.8, RSMo, [Appellant] is forever closing out this claim under the Missouri Workers' Compensation Law; [and] that [Appellant] will receive no further compensation or medical aid by reason of this accident/disease[.]" The Settlement Agreement also releases Respondent from all

---

[1] Our recitation of the facts is based upon the facts alleged in Appellant's petition. When reviewing a trial court's grant of a motion to dismiss, we treat the properly pleaded facts alleged in the petition as true and construe them liberally in favor of the plaintiff. *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012).

[2] Unless otherwise noted, all statutory citations are to RSMo 2000 as updated through the 2012 Cumulative Supplement.

liability for the accident upon approval of the Settlement Agreement by an administrative law judge ("ALJ"). An ALJ approved the Settlement Agreement on May 4, 2012.

In June 2012, Appellant sent a demand to Respondent for approval of knee replacement surgery on the basis that the surgery was covered by the handwritten provision stating that medical would remain open for one year following the Settlement Agreement. Respondent sent him back to the authorized treating physician, who again opined that the need for a total knee replacement was not the result of the 2009 work-related injury. Respondent then denied Appellant's request for knee replacement surgery.

On May 24, 2013, Appellant filed a two-count petition for equitable relief against Respondent requesting a declaratory judgment and seeking specific performance of the Settlement Agreement. In Count I, Appellant alleges that Respondent violated § 287.128.6(6) because Respondent knowingly made fraudulent and material misrepresentations for the purpose of denying him the medical benefits contemplated by the Settlement Agreement in that Respondent sent him back to the authorized treating physician that had already opined that the work-related injury did not cause the need for the knee replacement. Thus, Appellant contends that he is entitled to a declaration of his rights under the Settlement Agreement and a declaration regarding whether Respondent willfully violated § 287.128.3(6).

In Count II, Appellant requests specific performance of the Settlement Agreement. In doing so, Appellant alleges that he fulfilled all conditions precedent in order to receive the medical benefits provided for in the Settlement Agreement in that he demanded knee replacement surgery within one year of the date of the Settlement

3

Agreement. In his prayer for relief, Appellant requests that the trial court order Respondent to furnish him with "medical care to cure and relie[ve]" him "from the effects of his injury."

Respondent subsequently filed a motion to dismiss the petition, or, in the alternative, a motion for judgment on the pleadings. In the motion, Respondent contended that the trial court lacked subject matter jurisdiction because the subject matter of the case was within the primary jurisdiction of the Division. Respondent alternatively argued that it was entitled to judgment on the pleadings on the basis of its affirmative defense of exclusivity of the Missouri Workers' Compensation Law. Appellant opposed the motion contending that the Division lost jurisdiction over the case when the parties entered into the Settlement Agreement.

On December 11, 2013, the trial court granted Respondent's motion to dismiss. In its judgment, the trial court found that "the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation, has exclusive subject matter jurisdiction in this case." Appellant now appeals from the trial court's grant of the motion to dismiss.

In his sole point, Appellant contends that the trial court erred by dismissing the case for lack of subject matter jurisdiction. Appellant avers that the trial court has subject matter jurisdiction over this case because the Division's jurisdiction was exhausted once the parties entered into the Settlement Agreement. Respondent asserts that this case is within the primary jurisdiction of the Division because the relief requested by Appellant is provided for under the Missouri Workers' Compensation Law. The trial court dismissed the case on the basis that the Division had exclusive subject

4

matter jurisdiction. Thus, the trial court and the parties have characterized the issue presented as one of subject matter jurisdiction. Missouri case law, however, clearly establishes that such arguments do not pertain to subject matter jurisdiction.

Prior to 2009, the doctrine of primary jurisdiction stood for the proposition that a trial court lacked subject matter jurisdiction to "decide a controversy involving a question within the jurisdiction of an administrative tribunal until after the tribunal has rendered its decision." *Evans v. Empire Dist. Elec. Co.*, 346 S.W.3d 313, 316 (Mo. App. W.D. 2010) (internal quotation omitted). Since the Missouri Supreme Court's decisions in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), and *McCracken v. Wal-Mart Stores East LP*, 298 S.W.3d 473 (Mo. banc 2009), however, the concept of "primary jurisdiction" does not relate to subject matter jurisdiction, but rather is "a question of whether the trial court has a statutory right to proceed." *Evans*, 346 S.W.3d at 316.

Thus, whether a case must first be determined by the Division does not affect a trial court's subject matter jurisdiction. *McCracken*, 298 S.W.3d at 476-77. The Missouri Workers' Compensation Law does not divest a trial court of subject matter jurisdiction over issues that come within the Law's purview. *Treaster v. Betts*, 324 S.W.3d 487, 489-90 (Mo. App. W.D. 2010). Rather, an argument pertaining to the exclusivity of the Workers' Compensation Law "constitutes an affirmative defense." *Id.* at 489. Therefore, whether the relief sought by a plaintiff is covered by the Missouri Workers' Compensation Law "should be raised as an affirmative defense to the circuit court's statutory authority to proceed with resolving [the case]." *Id.* at 490 (internal quotation and emphasis omitted).

5

Accordingly, Respondent's contentions that the relief sought by Appellant is contemplated by the Missouri Workers' Compensation Law and, thus, must be decided by the Division does not pertain to subject matter jurisdiction. Instead, it goes to whether the trial court had the statutory right to proceed in this case. Thus, the trial court erred when it dismissed the case for lack of subject matter jurisdiction.

Nevertheless, Respondent raised the exclusivity of the Missouri Workers' Compensation Law as an affirmative defense and alternatively requested the trial court enter judgment on the pleadings on the same grounds raised in its motion to dismiss. Typically, a defendant seeking a pretrial dismissal based on the exclusivity of the Workers' Compensation Law must file a motion for summary judgment. *Fortenberry v. Buck*, 307 S.W.3d 676, 679 (Mo. App. W.D. 2010). However, if the exclusivity of the Workers' Compensation Law "appears from the face of the petition, a defendant can also properly file a motion to dismiss for failure to state a claim upon which relief can be granted or for judgment on the pleadings pursuant to Rule 55.27(b) if the affirmative defense appears from the petition and other pleadings." *Id.* at 679 n.2 (internal citation and emphasis omitted).

In its motion for judgment on the pleadings, Respondent contends that it is entitled to judgment on the pleadings because it is apparent from the face of the pleadings that the relief sought by Appellant is specifically contemplated by the Missouri Workers' Compensation Law. More specifically, Respondent asserts that § 287.140.8 ("the Reactivation Provision") constitutes the exclusive remedy available to Appellant under the circumstances of this case.

6

The exclusivity provision of the Workers' Compensation Law provides, in pertinent part:

> The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such injury or death, except such rights and remedies as are not provided for by this chapter.

§ 287.120.2. Thus, if an injury comes within the purview of the Missouri Workers' Compensation Law, then "recovery can be had, if at all, only under the terms set out in the [statute]." *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations*, 277 S.W.3d 670, 679 (Mo. banc 2009) (per curiam).

Respondent asserts that Appellant's request for knee replacement surgery falls squarely within the parameters of the Reactivation Provision. The Reactivation Provision states:

> The employer may be required by the division or the commission to furnish an injured employee with artificial legs, arms, hands, surgical orthopedic joints, or eyes, or braces, as needed, for life whenever the division or the commission shall find that the injured employee may be partially or wholly relieved of the effects of a permanent injury by the use thereof. The director of the division shall establish a procedure whereby a claim for compensation may be reactivated after settlement of such claim is completed. The claim shall be reactivated only after the claimant can show good cause for the reactivation of this claim and the claim shall be made only for the payment of medical procedures involving life-threatening surgical procedures or if the claimant requires the use of a new, or the modification, alteration or exchange of an existing, prosthetic device. For the purpose of this subsection, "**life threatening**" shall mean a situation or condition which, if not treated immediately, will likely result in the death of the injured worker.

§ 287.140.8. Therefore, the Reactivation Provision provides for the reactivation of a settled workers' compensation claim if the claimant requires the use of a new, or the modification, alteration or exchange of an existing, prosthetic device.

From the pleadings, it is apparent that Appellant settled his workers' compensation claim for his 2009 work-related accident. It is further apparent that Appellant is now seeking a total knee replacement the need for which he claims resulted from the 2009 work-related accident. Appellant conceded at oral argument that a knee replacement constitutes a prosthetic device for purposes of the Workers' Compensation Law. *See also* **§ 287.140.8** ("The employer may be required . . . to furnish an injured employee with artificial legs, arms, hands, *surgical orthopedic joints*, or eyes or braces, as needed, for life . . .") (emphasis added). Thus, on the face of the petition, Appellant settled his workers' compensation claim for his work-related accident and, as a result of that accident, he now requires the use of a new prosthetic device. Accordingly, the Reactivation Provision of the Missouri Workers' Compensation Law provides a mechanism for the relief sought by Appellant.

Appellant contends that the Reactivation Provision does not apply to him because reactivation can be sought only if there has been a previous award of a prosthetic device. However, a plain reading of the Reactivation Provision indicates that it encompasses new prosthetic devices. Particularly, § 287.140.8 states that a "claim shall be made only . . . if the claimant requires the use of a new, **or** the modification, alteration or exchange of an existing, prosthetic device." (Emphasis added). Thus, the plain language of § 287.140.8 provides for the reactivation of a settled claim if the claimant requires (1) the use of a new prosthetic device or (2) the modification, alteration or exchange of an existing prosthetic device.

Nothing in the language of § 287.140.8, therefore, suggests a previous award of a prosthetic device is a necessary prerequisite for reactivation. Rather, the only

8

requirements Missouri courts have specified are: "(1) a claim for compensation must have been filed within the time frame of the statute of limitation; (2) the claim for compensation must have been settled; and (3) good cause must be shown for the reactivation of the claim." *Clayton v. Teledyne Neosho*, 960 S.W.2d 532, 534 (Mo. App. S.D. 1998) (internal citation omitted). On the face of the pleadings, the relief requested by Appellant falls within those parameters.[3]

Appellant further avers that the fact that he settled his workers' compensation claim divested the Division of jurisdiction and the knee replacement surgery must be provided for under the handwritten, one-year future medical provision in the Settlement Agreement. Such a provision, however, has no affect on the applicability of the Reactivation Provision. In fact, the Settlement Agreement explicitly provides that Appellant understands that "by entering into this settlement, *except as provided by Section 287.140.8, RSMo*, [Appellant] is forever closing out this claim under the Missouri Workers' Compensation Law." (Emphasis added). Section 287.140.8 encompasses the Reactivation provision and pertains to the payment of prosthetic device expenses. Therefore, nothing in the Settlement Agreement prevents Appellant from seeking reactivation.

Accordingly, because Appellant alleges he requires a total knee replacement (a new prosthetic device) following the settlement of his workers' compensation claim, it appears from the face of the pleadings that the Reactivation Provision applies. Thus, the Missouri Workers' Compensation Law contemplates the relief sought by Appellant

---

[3] We note that although the handwritten provision in the Settlement Agreement states that future medical is to remain open for one year following the Settlement Agreement, there are no time limitations for reactivation set forth under § 287.140.8. Thus, the one-year future medical provision in the Settlement Agreement has no effect on Appellant's ability to seek reactivation.

9

and constitutes the exclusive remedy available to Appellant. The trial court, therefore, lacked the statutory authority to proceed with respect to Count II of Appellant's petition in which he requests the court order Respondent to furnish him with a total knee replacement.

In sum, the trial court erred by dismissing the case for lack of subject matter jurisdiction. Nevertheless, the trial court did lack the statutory authority to resolve the issues pertaining to Count II of Appellant's petition in that the Reactivation Provision of the Missouri Workers' Compensation Law specifically contemplates the relief sought by Appellant (a total knee replacement) and, thus, constitutes the exclusive remedy available to Appellant. Accordingly, we reverse the trial court's judgment and remand this case with instruction to the trial court to enter judgment on the pleadings consistent with this opinion in favor of Respondent with respect to Count II.[4]

_____
Joseph M. Ellis, Judge

All concur.

---

[4] On remand, the trial court must also address Count I of Appellant's petition. We gratuitously note that Appellant seeks a declaratory judgment that Respondent's allegedly fraudulent conduct violates § 287.128.3(6). Section 287.128.3(6) provides that "[i]t shall be unlawful for any person to . . . [k]nowingly make or cause to be made any false or fraudulent material statement or material representation for the purpose of obtaining or denying any benefit." However, violations of § 287.128.3(6) result in criminal liability. *See* **§ 287.128.4** (providing that any person violating the provisions of § 287.128.3 "shall be guilty of a class A misdemeanor and the person shall be liable to the state of Missouri for a fine up to ten thousand dollars). More importantly, the statute suggests that the attorney general or the respective prosecuting attorney are responsible for prosecuting violations of § 287.128. **§ 287.128.8**; **§ 287.128.11.** "[W]hen the legislature has established other means of enforcement of a statute, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent." ***Neighbors Against Large Swine Operations v. Continental Grain Co.***, 901 S.W.2d 127, 130 (Mo. App. W.D. 1995) (internal quotation omitted). Moreover, declaratory judgment actions "cannot serve as a basis for relief when the party seeking to invoke the Declaratory Judgment Act does not have a direct cause of action concerning the matter on which declaratory relief is sought." *Id.* at 132.