

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| JAMES C. LAMBRICH, and<br>DEBRA LAMBRICH, | ) | No. ED103128 |
| | ) | |
| | ) | Appeal from the Circuit Court of |
| Appellants, | ) | St. Louis County |
| | ) | |
| vs. | ) | |
| | ) | |
| DWIGHT KAY et al., | ) | Honorable Barbara Wallace |
| | ) | |
| Respondents. | ) | Filed: November 8, 2016 |
| | ) | |

Introduction

James C. Lambrich ("Lambrich") and his wife, Debra Lambrich,[1] filed a petition against

Cassens Transport Company ("CTC" or "Respondent"),[2] alleging retaliatory discrimination

against Lambrich after he filed workers' compensation claims. Following a bench trial, the court

entered judgment in favor of Respondent. Lambrich appeals, arguing the trial court erred in its

rulings of several pre-trial motions, and its final judgment. We affirm.

---

[1] Debra Lambrich joined the lawsuit with a claim for loss of consortium. However, that claim is not before us.

[2] In addition to Respondent, Lambrich's petition named Dwight Kay, Crawford & Company, and Tina Litwiller as defendants in the lawsuit. The trial court entered judgment in favor of all the defendants. On appeal, Lambrich only contests the judgment in favor of Respondent.

Factual and Procedural History

**A. Lambrich's Injuries and Other Relevant Factual History**

Lambrich worked as a service porter at CTC's Fenton terminal. The duties of a service porter include servicing and fueling CTC trucks, and changing tires and oil. On April 1, 2002, Lambrich reported to Bob Cellitti ("Cellitti"), his direct supervisor, that he injured his shoulder. Cellitti took Lambrich to the hospital where he received an MRI, which revealed no abnormality. Dr. Michael Nogalski, an orthopedic specialist, examined Lambrich and returned him to full duty. On August 23, 2002, Lambrich reinjured himself. Lambrich reported the injury to Cellitti and Steven Gross ("Gross"), CTC's terminal manager, indicating he could not work because of the injury. Lambrich, however, did not complete a workers' compensation injury report. Due to the confusion over whether this was a work-related injury, Gross placed Lambrich on indefinite sick leave ("ISL").[3]

Later, Lambrich completed a workers' compensation injury report. Tina Litwiller ("Litwiller"), the adjuster responsible for handling CTC's workers' compensation claims,[4] sent Lambrich to Dr. Nogalski. Thereafter, Dr. Nogalski excused Lambrich from work except for light duty with a 10-pound weight-lifting restriction. CTC placed Lambrich on workers' compensation status, and Lambrich received temporary total disability ("TTD") benefits.

In September 2002, Dr. Nogalski sent a letter to Litwiller, opining Lambrich had reached maximum medical improvement ("MMI") and was released to return to work. Dr. Nogalski limited Lambrich's work to infrequent lifting of 55 pounds and frequent lifting of 35 pounds. CTC's

---

[3] ISL is an administrative status assigned to CTC employees who are unable to work either (1) because they have a personal injury or illness unrelated to work that prevents them from working or (2) because of an unresolved medical disagreement about an employee's ability to return to work that has arisen in a workers' compensation claim. Placement on ISL protects an employee's position and seniority in the event the employee returns to work.

[4] Litwiller was an employee of Crawford & Company. CTC retained Crawford & Company to handle its workers' compensation claims as a third-party administrator.

service porter position requires the lifting of up to 60 pounds for fueling and of up to 50 pounds for tire work. After consulting Bill Molter ("Molter"), CTC's director of safety,[5] Litwiller believed the restrictions fit within Lambrich's position as a service porter.[6] On September 25, 2002, Litwiller told Lambrich to contact CTC about returning to work, and that his TTD payments would end that day. Lambrich did not return to CTC after September 2002 because he believed he could not work.

Later, Lambrich saw Dr. Raymond Cohen and received a slip excusing him from work. When Kevin Nelson ("Nelson"), CTC's safety coordinator, received the slip, he placed Lambrich on ISL as of October 1, 2002 because of the apparent medical disagreement regarding Lambrich's ability to work. Nelson testified CTC placed injured employees who had filed claims on ISL if there were conflicting medical opinions as to whether the employee was released to return to work.

Thereafter, CTC authorized Lambrich to be placed under surveillance. Lambrich was videotaped engaging in work activities at his greenhouse. Dr. Nogalski reviewed the surveillance tapes and opined that Lambrich could return to work at full duty with no restrictions. In December 2002, Dr. Nogalski reexamined Lambrich and reconfirmed he could return to work. To date, Lambrich has not returned to work at CTC and remains on ISL without pay.

## B. Lambrich's Workers' Compensation Claims, the Parties' Pre-Trial Motions, and Other Relevant Procedural Posture

Lambrich filed two claims for his injuries with the Division of Workers' Compensation (the "Division"). A hearing was held, and the administrative law judge ("ALJ") entered Findings of Fact and Rulings of Law on May 27, 2011. The ALJ concluded Lambrich was not entitled to

---

[5] Molter also managed CTC's workers' compensation program. Molter monitored and oversaw Litwiller's handling of the claims. Neither Cellitti, Gross, nor Nelson made decisions regarding claims filed against CTC.

[6] An employee who files a workers' compensation claim may return to work with restrictions if they fit within the employee's job description.

TTD benefits. Lambrich, however, was awarded 15% permanent partial disability ("PPD") of the left shoulder, and 5% PPD of the body as a whole for his psychiatric injuries[7] as a result of his April 1, 2002 injury. Lambrich also was awarded 12-1/2% PPD of the body as a whole for his back, and 10% PPD of the body as a whole for his psychiatric injuries as a result of his August 23, 2002 injury.

While Lambrich's workers' compensation claims were pending, Lambrich filed his petition in this matter, alleging retaliatory discrimination. Specifically, Lambrich alleged Respondent retaliated against him for filing workers' compensation claims by placing him on ISL without pay, prematurely discontinuing his TTD benefits, requiring him to perform tasks that would aggravate his injury, and denying him seniority rights.[8] Lambrich sought damages for financial losses and psychological injuries caused by his inability to work. Respondent filed an answer and pled section 287.120.2,[9] the exclusivity provision, of the Missouri Workers' Compensation Law as an affirmative defense.

Prior to trial, Respondent filed a motion to strike and/or dismiss a number of Lambrich's allegations, arguing they were barred by the exclusivity provision. Thereafter, the court ordered the allegations of inadequate medical treatment in paragraphs 6(g)(1), 6(g)(6), and 6(m), and the allegations of improper investigation and administration of the compensation claims in paragraphs

---

[7] The ALJ concluded Lambrich had a history of psychiatric problems. In late 2002 and early 2003, Lambrich suffered from depression and anxiety because of pain in his shoulder and his back problems. The ALJ concluded Lambrich has been under regular psychiatric treatment since 2003 and takes anti-depressant drugs to control his symptoms.

[8] Since Lambrich only appeals the trial court's judgment in favor of Respondent, we recite the facts pertinent to this appeal.

[9] All further statutory references are to RSMo 2000, unless otherwise indicated.
Section 287.120.2 RSMo Cumm.Supp. 2007 provides:
> The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

6(h), 6(i), 6(j), 6(k), and 6(l) stricken as being barred by the exclusivity defense. However, the court did not strike the allegations regarding Lambrich's discrimination claim.

Respondent also filed a motion for partial summary judgment on Lambrich's claim that CTC discriminated against him by denying him seniority rights to which he was entitled. The court granted Respondent's motion, finding Lambrich failed to produce evidence that he had a seniority right to choose his work assignments as a service porter.[10]

In addition, Lambrich filed motions to compel deposition answers from Litwiller and Molter. During the depositions, Lambrich's counsel sought answers regarding Lambrich's workers' compensation claims. Respondent objected on the grounds of attorney-client privilege and work product privilege. The trial court heard the motions[11] and denied them "based on [Defendant's] representations that the subject matter of the questions discussed in these motions is not relevant. Parties can revisit this ruling, if necessary, based upon the outcome of future substantive motions."[12]

Thereafter, during a bench trial, the court heard the merits of Lambrich's case. The evidence adduced at trial consisted of numerous exhibits, portions of deposition testimonies, and live testimony from Lambrich, Cellitti, Nelson, Litwiller, Molter, and Gross. The court weighed and considered the evidence, and the relative credibility of the witnesses. On February 25, 2015, the court entered its Findings of Fact, Conclusions of Law, Order and Judgment in favor of Respondent.

---

[10] Additional arguments and evidence relevant to Respondent's motion to strike and/or dismiss and motion for partial summary judgment will be set out as needed in sections IV and I, respectively, of this opinion.

[11] A transcript from the hearing conducted on Lambrich's motions to compel was not included in the record on appeal.

[12] Additional arguments and evidence relevant to Lambrich's motions to compel will be set out as needed in section III of this opinion.

First, the trial court found the issues of unpaid TTD benefits and psychological injures were the same as those previously before the Division. Thus, the court found Lambrich's claims of retaliatory discrimination and injury against Respondent were barred by the exclusivity provision. Second, the court found even if the exclusivity defense did not apply, Lambrich failed to prove Respondent either discharged or discriminated against him as required by section 287.780.[13]

Thereafter, Lambrich filed a motion to amend judgment and for new trial. The court subsequently denied the motion. This appeal follows.

Points on Appeal

Lambrich asserts five points on appeal. In Point I, Lambrich argues the trial court erred in granting summary judgment on the claim that he was deprived of seniority rights after he exercised his workers' compensation rights. In Point II, Lambrich argues the trial court erred in granting Respondent's motion to strike and/or dismiss his allegations based on the exclusivity defense because a pre-trial dismissal based on the affirmative defense of workers' compensation exclusivity can only be entered pursuant to a motion for summary judgment. In Point III, Lambrich argues the trial court erred in entering judgment for Respondent by identifying motives for Respondent's conduct that were not in evidence. In Point IV, Lambrich argues the trial court erred in denying his motion to compel Respondent's manager to answer deposition questions regarding Respondent's motive in its treatment of Lambrich based on an alleged lack of relevance. In Point V, Lambrich argues the trial court erred in holding, as a matter of law, that his allegations that Respondent retaliated against his exercise of workers' compensation rights by placing him on ISL without pay were barred by workers' compensation exclusivity.

_____

[13] Section 287.780 provides: "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer."

6

**I. Point One**

In his first point, Lambrich argues the trial court erred in granting summary judgment on his claim that he was deprived of seniority rights after he exercised his workers' compensation rights. Specifically, Lambrich argues (1) the court ignored his more definitive testimony that he had a right to choose his job assignments; (2) the trial court's order did not address the testimony of James Ostman ("Ostman"), CTC's shop manager; and (3) the court failed to give him the benefit of all reasonable inferences.

We review the entry of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* We review the record in the light most favorable to the non-moving party. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). We accord the non-movant the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993).

To prevail on a motion for summary judgment, a defending party, such as Respondent, must establish any one of the following: (1) facts that negate any one of the claimant's elements; (2) the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defenses. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Once the moving party has established a right to judgment as a matter

of law, the burden shifts to the non-movant to demonstrate there is a genuine dispute as to the facts underlying the movant's right to judgment. *Id.* at 381–82.

Among other allegations, Lambrich alleged Respondent discriminated against him by "denying [Lambrich] seniority rights to which he was entitled, which would have enabled him to choose job assignments that would not have aggravated his existing injuries or otherwise cause him further injury." Thereafter, Respondent moved for summary judgment on this claim. Specifically, Respondent argued Lambrich neither set forth any evidence that he had the right to choose his specific job assignments nor did he produce any evidence that he asserted such a right, which was denied to him. Respondent further argued even if such a right did exist and Lambrich was denied that right, there is no evidence that any such denial was exclusively caused by his filing of a compensation claim.

To support his claim, Lambrich relied on the following portion of his deposition testimony:

**Q:** In terms of seniority, what – you – you've described – let me back up a moment. I know there was a – a movement to give you seniority over LaGrant Suggs.
**A:** That's correct.
**Q:** Okay. And what – what benefit does that provide you, to have a one day seniority over him?
**A:** Well, that would give me rights to choose jobs.
**Q:** Okay.
**A:** I guess it would give me rights to choose jobs. I don't know. When Bob Cellitti came out to the shop, he just assigned jobs.

Lambrich also relied on the deposition testimony of Ostman:

**Q:** Okay. Among the service porters, if you have two to three who are working on a given shift, how do they decide who gets to do what job?
**A:** They usually by seniority will – if a guy likes fueling, he'll take fueling initiatives because he's got more seniority than somebody that doesn't – he doesn't want to service the trucks or doesn't want to do tire work, its . . .
**Q:** If the two or three service porters worked out amongst themselves that one would take care of the tire work and the other one would take care of the rest of the work, would there be any restriction on that?
**A:** No.

In order to defeat Respondent's summary judgment motion, Lambrich was required to establish Respondent had an enforceable policy regarding seniority rights. In light of the above testimony and the arguments on appeal, we agree with the trial court's conclusion that Lambrich failed to produce evidence that he had a vested seniority right.

The court primarily based its determination on Lambrich's testimony, concluding, in pertinent part:

> The plaintiffs cited to . . . Lambrich's deposition for the proposition that "if he had been given proper seniority status, the practice at the Fenton, Missouri terminal would have allowed him to choose job assignments." Mr. Lambrich did not testify to that fact. Instead, Mr. Lambrich said he guessed it would give him rights, but he did not know.

On appeal, Lambrich argues the trial court placed too much emphasis on his statement, "I guess," while ignoring his more definitive testimony, "that would give me rights to choose jobs." However, we find Lambrich's use of the phrase "I guess" significant. Not only does it highlight Lambrich's uncertainty as to the accuracy of his statement, but it also undercuts his argument that he had an enforceable seniority right. To survive summary judgment, Lambrich must set forth more evidence than mere speculation. *See Stanbrough v. Vitek Solutions, Inc.*, 445 S.W.3d 90, 99 (Mo. App. E.D. 2014) (stating reliance only upon mere doubt and speculation is not enough to create an issue of material fact). Moreover, Lambrich, by his own admission, testified he did not know what benefits, if any, he was entitled to because Cellitti assigned jobs to the service porters. We find no evidence in the record to suggest Cellitti either assigned jobs based on a formal seniority policy or even took seniority into account when doing so.

In addition, Lambrich argues Ostman's testimony provides evidence that he had a seniority right to choose his work assignments. However, Lambrich reads Ostman's testimony too broadly. Ostman testified the service porters acknowledged seniority *amongst themselves* when dividing

9

the work. This may demonstrate comradery, but it does not establish proof of an enforceable seniority right. Thus, we find Ostman's testimony is insufficient to create a genuine dispute.

While Lambrich correctly argues we review the record in the light most favorable to the non-moving party and accord the non-movant the benefit of all reasonable inferences from the record, we will not find the existence of a genuine issue of fact based merely on "conjecture, theory and possibilities." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378. Lambrich failed to meet his burden of demonstrating a genuine dispute as to the facts underlying Respondent's right to judgment. *See id.* at 382.

Therefore, we find Lambrich failed to demonstrate a genuine issue of material fact as to his claim of seniority, and we affirm the trial court's grant of summary judgment. Point one is denied.

## II. Point Three

For ease of our analysis, we will address Lambrich's remaining four points out of order. In his third point, Lambrich argues the trial court erred in entering judgment for Respondent by identifying motives for its conduct that were not in evidence. Specifically, that Respondent's conduct toward Lambrich was motivated by "mistakes and misunderstandings." Lambrich argues fundamental fairness requires that a plaintiff's claim be afforded relief to prevent a defendant from defeating a plaintiff's claim by concealment prior to a decision, and that a plaintiff be able to determine the opponent's position before the trial concludes. Lambrich contends Respondent refused to disclose any motive for its conduct in discovery or at trial, and the court identified motives in its judgment.

Our applicable standard of review on this point is derived from *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). On appeal from a judgment in a bench-tried case, this court will

sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32. "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.*

At trial, the court weighed and considered the evidence, and the credibility of the witnesses. In its judgment, the court concluded:

> The Court does not find the actions of Defendants were done with animus, or intent to discriminate or punish. They were business decisions made similarly to those made routinely in these situations. Some actions might have reflected a misunderstanding of work requirements or a mistake, but the Court does not find intentional wrongdoing towards Lambrich motivated these mistakes or misunderstandings.

We find the trial court did not identify any motives on the part of Respondent but merely drew reasonable inferences from the evidence presented at trial. "A trial court, functioning as a fact-finder, can draw all reasonable inferences from the evidence presented to it and can base its ultimate conclusions upon such reasonable inferences." *Neal v. Neal*, 776 S.W.2d 861, 868 (Mo. App. S.D. 1989). During trial, numerous exhibits were admitted, and portions of deposition testimonies were read into evidence. Further, the court heard testimony from Cellitti, Nelson, Litwiller, Molter, and Gross, all of whom unequivocally testified they would never punish or discriminate against an employee for filing a workers' compensation claim. The court found their testimonies credible. *See Frontenac Bank v. T.R. Hughes, Inc.*, 404 S.W.3d 272, 283–84 (Mo. App. E.D. 2012) (finding the trial court "is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record."). As a result, the court specifically found there was no evidence of animus, or intent to discriminate or retaliate against

11

Lambrich *at all*. While the court concluded Respondent's actions "*might* have reflected a misunderstanding of work requirements or a mistake," we find this to be a reasonable inference in light of the evidence presented at trial. Such judgments of the trial courts deserve appellate court deference. *See First Nat'l Ins. Co. of Am. v. Clark*, 899 S.W.2d 520, 521 (Mo. banc 1995). Accordingly, we find the trial court's judgment was not against the weight of the evidence. Point three is denied.

### III. Point Four

In his fourth point, Lambrich argues the trial court erred in denying his motion to compel Respondent's manager (Molter) to answer deposition questions regarding Respondent's motive in its treatment of him based on an alleged lack of relevance. Lambrich contends Rule 57.03[14] does not allow a witness to refuse to answer on the basis of relevance and an employer's motive is always relevant in a retaliation case.

"A trial court is vested with broad discretion in administering the rules of discovery, and an appellate court should not disturb the rulings absent an abuse of discretion." *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992). A trial court abuses its discretion only if its order is clearly against the logic of the circumstance, is arbitrary and unreasonable, and indicates a lack of careful consideration. *Green v. Fred Weber, Inc.*, 254 S.W.3d 874, 880 (Mo. banc 2008).

Prior to trial, Lambrich deposed Litwiller and Molter, seeking answers regarding Lambrich's workers' compensation claims. Respondent objected on the grounds of attorney-client privilege and work product privilege. Thereafter, Lambrich filed motions to compel answers to the deposition questions. The trial court held a hearing on the motions and concluded, "[T]he motions are denied at this time and [Defendant's] objections are sustained, based on [Defendant's]

---

[14] All rule references are to Missouri Supreme Court Rules (2015) unless otherwise indicated. Rule 57.03 sets forth the requirements for depositions upon oral examination.

representations that the subject matter of the questions discussed in these motions is not relevant. Parties can revisit this ruling, if necessary, based upon the outcome of future substantive motions."

On appeal, Lambrich argues the trial court denied his motions to compel because it concluded Respondent's *motive* was irrelevant. Lambrich's argument requires us to review the record to determine what representations, if any, were made to the court during the hearing as well as the basis for the court's finding. Therefore, a transcript of the hearing is indispensable to our review. *See Poke v. Mathis*, 461 S.W.3d 40, 42 (Mo. App. E.D. 2015). However, Lambrich did not file a transcript of the hearing with the record on appeal.

Rule 81.12(a) provides, "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented . . . to the appellate court for decision." Lambrich did not comply with this requirement with respect to the question he has presented for our decision. "Where no transcript is filed or exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appellant." *Saturn of Tiffany Springs v. McDaris*, 331 S.W.3d 704, 712 (Mo. App. W.D. 2011) (internal citations omitted). We presume, therefore, that the transcript of the hearing on the motions, which was not included in the record on appeal, supported the trial court's order. *See id.*

Accordingly, we cannot conclude the trial court abused its discretion in denying Lambrich's motions to compel. Point four is denied.

**IV. Points Two and Five**

Finally, we address Lambrich's second and fifth points together. In his second point, Lambrich argues the trial court erred in granting Respondent's motion to strike and/or dismiss his allegations based on the exclusivity defense because a pre-trial dismissal based on the affirmative

defense of workers' compensation exclusivity can only be entered pursuant to a motion for summary judgment.

Prior to the Missouri Supreme Court's decision in *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473 (Mo. banc 2009), defendants could raise the exclusivity provision of the Workers' Compensation Law as a defense in a motion to dismiss for lack of subject matter jurisdiction. *Fortenberry v. Buck*, 307 S.W.3d 676, 678 (Mo. App. W.D. 2010). Thus, courts would apply the standard of review appropriate for a motion to dismiss. *Id.* However, the court subsequently clarified in *McCracken* that the exclusivity provision does not affect the trial court's subject matter jurisdiction. *McCracken*, 298 S.W.3d at 479. Rather, the exclusivity provision must be raised as an affirmative defense in a motion for summary judgment "to the circuit court's *statutory authority to proceed* with resolving [the] claim." *Id.* at 477 (emphasis in original); *see also Cooper v. Chrysler Group, LLC*, 361 S.W.3d 60, 65 (Mo. App. E.D. 2011); *Treaster v. Betts*, 324 S.W.3d 487, 490 (Mo. App. W.D. 2010). Therefore, in order to grant summary judgment based on the exclusivity provision, the court must find there is no genuine dispute as to the existence of each of the facts necessary to support the defendant's affirmative defense. *Fortenberry*, 307 S.W.3d at 679; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

However, when the applicability of section 287.120.2 "appears from the face of the petition, a defendant can also properly file a motion to dismiss for failure to state a claim upon which relief can be granted [see Rule 55.27(a)(6)] or for judgment on the pleadings pursuant to Rule 55.27(b) if the affirmative defense appears from the petition and other pleadings." *Pierce v. Zurich Am. Ins. Co.*, 441 S.W.3d 208, 212 (Mo. App. W.D. 2014) (internal citation omitted).

In this case, we find Respondent properly raised the exclusivity provision in a motion to dismiss for failure to state a claim as authorized by *Pierce*. Respondent moved to strike and/or

14

dismiss a number of Lambrich's allegations, arguing they were barred by the exclusivity provision. Thereafter, the court ordered the allegations of inadequate medical treatment in paragraphs 6(g)(1), 6(g)(6), and 6(m), and the allegations of improper investigation and administration of the compensation claims in paragraphs 6(h), 6(i), 6(j), 6(k), and 6(l) stricken as being barred by the exclusivity defense. However, the court did not strike the allegations regarding Lambrich's discrimination claim. We agree with the trial court's ruling.

Section 287.120.2 sets forth the exclusivity provision of the Workers' Compensation Law, providing:

> The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

Thus, if an injury falls within the Missouri Workers' Compensation Law, then "recovery can be had, if at all, only under the terms set out in the act." *Mo. Alliance for Retired Ams. v. Dep't of Labor and Indus. Relations*, 277 S.W.3d 670, 679 (Mo. banc 2009).

We first address the allegations of inadequate medical treatment in paragraphs 6(g)(1), 6(g)(6), and (6)(m). In paragraphs 6(g)(1) and 6(g)(6), Lambrich alleged discrimination based on Respondent "requiring Plaintiff to perform specific tasks after being advised those tasks would cause Plaintiff further injury or aggravate his existing injuries" and "requiring Plaintiff to return to work after doctors had advised Defendants he had not been cleared to return to his regular job duties." In paragraph 6(m), Lambrich alleged, "Defendants denied medical treatment recommended by doctors Defendants selected to evaluate Plaintiff."

While Lambrich argues Respondent's actions were discriminatory and outside the purview of the Division, we disagree and find *Felts v. Ford Motor Co.* instructive. In *Felts*, Felts sued Ford, his employer, alleging a violation of his rights under section 287.780 to be free of retaliation and

15

discrimination after he filed a workers' compensation claim. *Felts v. Ford Motor, Co.*, 916 S.W.2d 798, 799 (Mo. App. W.D. 1995). Felts alleged Ford required him to perform job tasks he was medically unable to perform, which exceeded his doctor's restrictions, and interfered with medical treatment for his work-related injuries. *Id.* at 800. However, the appellate court dismissed Felts's claims, relying on section 287.140, which provides that an employer is obligated to provide medical treatment as may be reasonably required to cure the employee's injury or disability. *Felts*, 916 S.W.2d at 801. The court held, "The decision as to what type of care is reasonable under the circumstances lies within the exclusive domain of the Workers' Compensation Division." *Id.*; *see also Wiley v. Shank & Flattery, Inc.*, 848 S.W.2d 2, 3–5 (Mo. App. W.D. 1992) (holding claims that employer interfered with medical care and treatment, required employee to return to work, and prevented employee from following his doctor's advice were barred by the exclusivity provision). Similarly, Lambrich's claims in paragraphs 6(g)(1), 6(g)(6), and (6)(m) attempt to seek damages indirectly caused by Respondent's denial and interference with medical treatment. Thus, they fall within the exclusive jurisdiction of the Division.

Next, we address paragraphs 6(h), 6(i), 6(j), 6(k), and 6(l), the allegations of improper investigation and administration of the compensation claims. Lambrich alleged Respondent "created, ordered and/or facilitated the creation of false reports relating to [Lambrich]" that resulted in the loss of TTD benefits; edited videotaped surveillance of him; presented the edited surveillance tapes to physicians to review and give opinions that exaggerated his ability to perform manual labor; and provided inaccurate information to third parties regarding his job duties, and destroyed or concealed information that accurately depicted his normal job duties. We find each of these claims also falls within the exclusive jurisdiction of the Division.

16

Again, the *Felts* court addressed similar claims, finding the allegations that Ford discriminated against Felts through the administration of his claim, and the denial of his workers' compensation benefits was exclusively barred by the Workers' Compensation Law. *Felts*, 916 S.W.2d at 802. Moreover, the Eight Circuit in *Phillips v. Ford Motor Co.* noted that to the extent an employee is "seeking a remedy based directly or indirectly upon the employer's denial of workers' compensation benefits, their claims [are] subject to the exclusive rights and remedies provided in the state's workers' compensation laws and likewise [are] within the exclusive original jurisdiction of the Division." *Phillips v. Ford Motor Co.*, 83 F.3d 235, 238 (8th Cir. 1996) (citing *Felts*, 916 S.W.2d at 803).

Although *Felts*, *Wiley*, and *Phillips* were decided prior to *McCracken*, the *McCracken* court only abrogated *Felts* and *Wiley* to the extent it held the exclusivity provision does not affect the trial court's subject matter jurisdiction, and that defendant must raise the issue as an affirmative defense rather than on a motion to dismiss. Thus, *McCracken* did not affect the substantive holdings that an employee cannot base a discrimination claim on allegations that fall within the exclusivity provision of the Workers' Compensation Law.

Accordingly, we find the trial court appropriately struck the allegations in paragraphs 6(g)(1), 6(g)(6), 6(h)–(m) because they fall within the exclusive jurisdiction of the Division. Point two is denied.

In his fifth point, Lambrich argues the trial court erred in holding, as a matter of law, that his allegations that Respondent retaliated against his exercise of workers' compensation rights by placing him on ISL without pay were barred by the exclusivity provision. Specifically, Lambrich asserts section 287.780 prohibits discrimination "in any way," and the exclusivity defense only applies to injuries caused by "accidents" that can be compensated through the workers'

17

compensation system. Lambrich contends his allegations pled ways in which Respondent discriminated against him, and did not involve either injuries caused by an "accident" or damages that could be remedied through the workers' compensation system.

On appeal from a judgment in a bench-tried case, this court will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy*, 536 S.W.2d at 32. "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.*

Here, Lambrich claimed he was prematurely released to return to work after Dr. Nogalski examined him and found he had reached MMI. Lambrich's TTD benefits were discontinued, and thereafter he was placed on ISL status due to the conflicting medical opinions. Lambrich sought damages for his financial losses and for the psychological injuries caused by his inability to work. In its judgment, the trial court found the exclusivity provision bars employees "from seeking, in a civil action, benefits or compensation otherwise available to them under the Workers' Compensation Law." The court found Lambrich's claims that he was released to return to work improperly, causing his TTD benefits to be prematurely discontinued, as well as the financial losses and psychological injuries, were the same as those sought in his workers' compensation claims. Accordingly, the court concluded they were barred by the exclusivity provision. Relying on *Felts*, *Wiley*, and *Phillips*, the court further found, "The Exclusivity Provision has been interpreted so an employee may not claim civil discrimination under § 287.780 R.S.Mo. in connection with a denial of worker's compensation benefits or the way in which his or her workers' compensation claim is administered." We agree.

18

Here, Lambrich is essentially seeking the same remedies as the plaintiffs in *Felts* and *Wiley*. Felts alleged he suffered "aggravation of his injuries which prolonged his recovery; new injuries resulting in additional permanent disability; pain and suffering; severe and prolonged economic hardship that resulted and continues to result in emotional and mental distress; and loss in Mr. Felts' quality of life." *Felts*, 916 S.W.2d at 802. The appellate court concluded, "All of Felts' claims fall under the provisions of the Act. The injuries for which he seeks compensation arose out of his employment at Ford as is required by § 287.120. Remedies under the Act include compensation for mental conditions." *Id.* (internal citation omitted). Similarly, in *Wiley*, the plaintiff alleged his employer interfered with his care and treatment by requiring him to return to his job against his doctor's advice, and requiring him to continue to work when he was physically unable to do so. *Wiley*, 848 S.W.2d at 3. The appellate court affirmed the trial court's dismissal of the petition because plaintiff's exclusive remedy was under the Workers' Compensation Law. *Id.* at 4–5.

The same analysis applies here. We find, like *Felts* and *Wiley*, that Lambrich's claims for financial losses and psychological injuries arising out of his inability to work are barred by the exclusivity provision, and his remedy falls squarely within the Workers' Compensation Law. To hold otherwise, as the *Phillips* court acknowledged, "would open the door for every claimant who is denied benefits to avoid the administrative review of such claims required by Missouri Workers' Compensation Law." *Phillips*, 83 F.3d at 237 (internal citation omitted).

Moreover, the issues of unpaid TTD benefits and psychological injuries before the trial court were the same as those previously heard by the Division. Following Lambrich's workers' compensation hearing, the ALJ concluded Lambrich was not entitled to TTD benefits. However, Lambrich was awarded 15% PPD of the left shoulder, and 5% PPD of the body as a whole for his

psychiatric injuries as a result of his April 1, 2002 injury. Lambrich also was awarded 12-1/2% PPD of the body as a whole for his back and 10% PPD of the body as a whole for his psychiatric injuries as a result of his August 23, 2002 injury. After hearing the evidence, the trial court concluded, "Essentially, Lambrich is seeking damages of the same character in this matter as those he sought in his worker's compensation case, as well as damages he claims were indirectly caused by the denial of these worker's compensation benefits." Other than the claims of financial losses and psychological injuries before the Division, nothing in the record suggests Lambrich provided any evidence at trial that he suffered additional damages. Therefore, we agree with the trial court.[15]

Notwithstanding the exclusivity defense, the trial court reached the merits of Lambrich's claim. At the time of trial, *Hansome v. Northwestern Cooperage Co.*, governed the cause of action under section 287.780. In *Hansome*, the Missouri Supreme Court held the action authorized by section 287.780 has four elements: "(1) plaintiff's status as employee of defendant before injury, (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions." *Hansome v. Nw. Cooperage Co.*, 679 S.W.2d 273, 275 (Mo. banc 1984). However, in 2014, the Missouri Supreme Court overruled *Hansome*'s causation standard, holding an employee need only demonstrate that his exercise of rights under chapter 287 was a "contributing factor" of the discrimination or discharge. *Templemire v. W&M Welding, Inc.*, 433 S.W.3d 371, 373 (Mo. banc 2014).

To prevail on his claim under section 287.780, Lambrich must establish he was discharged or discriminated against for exercising rights under the Workers' Compensation Law. *See id.* at 378; *Hansome*, 679 S.W.2d at 275. Lambrich failed to meet his burden. The trial court concluded

---

[15] We do not conclude that all psychological damages alleged in retaliatory discrimination cases are barred by section 287.120.2, the exclusivity provision, of the Workers' Compensation Law.

Lambrich's placement on ISL was not "tantamount to a discharge." ISL is an administrative status designed to protect the jobs of employees who are unable to work either (1) because they have a personal injury or illness unrelated to work that prevents them from working or (2) because of an unresolved medical disagreement about an employee's ability to return to work that has arisen in a workers' compensation claim. Lambrich was placed on ISL on two occasions. Lambrich was first placed on ISL due to the confusion over whether the injury was work related, and his resistance to completing a workers' compensation injury report. Later, Lambrich was placed on ISL after Dr. Nogalski and Dr. Cohen gave conflicting medical opinions regarding Lambrich's ability to return to work. Respondent testified Lambrich was never discharged and can return to work when able. Accordingly, we find the trial court properly concluded Lambrich's placement on ISL was consistent with CTC's practice and policy, and did not amount to a discharge. *See Rutherford v. Davis*, 458 S.W.3d 456, 458 (Mo. App. E.D. 2015) ("We accept as true all evidence and reasonable inferences favorable to the prevailing party and disregard contrary evidence and inferences.").

The trial court further concluded Lambrich failed to establish Respondent discriminated against him. To prove discrimination, Lambrich must show that Respondent acted with retaliatory motive or purpose. *See Reed v. Sale Mem'l Hosp. & Clinic*, 698 S.W.2d 931, 935 (Mo. App. S.D. 1985). The court found credible the testimonies of Litwiller, Molter, Nelson, Gross, and Cellitti, all of whom testified they would never punish or discriminate against an employee for filing a workers' compensation claim. The court subsequently concluded their actions were taken without animus or intent to discriminate or punish. We defer to the trial court's determination as to the credibility of the witnesses. *See McAllister v. McAllister*, 101 S.W.3d 287, 290–91 (Mo. App. E.D. 2003); *Milligan v. Helmstetter*, 15 S.W.3d 15, 24 (Mo. App. W.D. 2000) ("The trial judge has

21

absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court, and its findings on witness credibility are never reviewable by the appellate court.").

While recognizing the legal standard of causation required to prevail under section 287.780 changed after trial from "exclusive cause" to "contributing factor," the trial court made a specific finding that "[u]nder either standard of causation . . . Plaintiff failed to establish his burden," and Respondent did not discharge or discriminate against Lambrich for exercising his workers' compensation rights.

We find the trial court's judgment was not against the weight of the evidence, and Lambrich's claims of retaliatory discrimination were barred by the exclusivity provision. Point five is denied.

Conclusion

We affirm the judgment of the trial court.

_____
Angela T. Quigless, P.J.

Robert G. Dowd, Jr., J., and
Lisa S. Van Amburg, J., Concur.